**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD | * | |
| Applicant, | * | |
| v. | * | Civil Action No. RDB 09-2081 |
| INTERBAKE FOODS, LLC, | * | |
| Respondent. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Applicant National Labor Relations Board ("NLRB" or "Board") filed an unfair labor practice charge under the National Labor Relations Act ("NLRA"), § 8(a) (1), (3) and (4), 29 U.S.C. § 161(1), against Respondent Interbake Foods, LLC ("Interbake").  Pending before this court is the NLRB's Application for Order Requiring Compliance with Administrative Subpoena Duces Tecum ("Application"), ordering production of certain documents by Interbake for *in camera* inspection by the Administrative Law Judge ("ALJ") assigned to the hearing.  A hearing was held by this Court on the application on August 21, 2009 and argument of counsel was heard.  (Local Rule 105.6 D. Md. 2008.)  For the reasons stated below, the NLRB's Application is DENIED.

## BACKGROUND

Respondent Interbake Foods, LLC is a commercial bakery with several facilities, including one in Front Royal, Virginia.  In an administrative hearing the NLRB prosecuted a number of unfair labor practices charges against Interbake that it alleges occurred at that facility.

The parties are awaiting a decision on these charges from Administrative Law Judge John T. Clark ("the ALJ").

On December 10, 2008, the NLRB called Melissa Jones ("Jones"), an Interbake employee, as a witness during the administrative hearing.  During her testimony, Jones stated that on multiple occasions she used a digital recorder to secretly record conversations and meetings with Interbake managers and employees during the workday, which she acknowledged was against company policy.  (Ex. A, NLRB Hr'g Tr. 2175-76, 2178.)  After the hearing concluded on February 10, 2009, Interbake launched an investigation of Jones's conduct.  (Ex. A, NLRB Hr'g Tr. 2486-93; Ex. D.)  Because this investigation confirmed Jones's actions, Interbake terminated her on or about February 20, 2009 for violating company policy.  (Answer at 5.)

On July 7, 2009, the NLRB issued an Amended Complaint alleging that Jones' firing violated federal labor law.  (Answer at 6.)  On July 10, 2009, the NLRB issued a subpoena duces tecum requiring Interbake to produce documents relevant to Jones's dismissal.  (NLRB Br. at 2.)  On July 20, 2009, Interbake filed a petition to revoke the subpoena, making various objections including that certain documents were protected by the attorney-client or work-product privileges.  (*Id*.)  Interbake ultimately produced approximately 320 pages of documents, as well as a privilege log identifying the documents it claimed were protected.  (Answer at 6.)

On July 28, 2009, the hearing regarding Jones's termination began and the NLRB subpoenaed Jill Slaughter ("Slaughter"), one of Interbake's witnesses.  (Mem. in Supp. of NLRB App. at 3; Answer at 7.)  In the course of its examination of Slaughter, the NLRB requested that the ALJ conduct an *in camera* inspection of two emails the NLRB believed might expose an inconsistency in Slaughter's testimony.  (Answer at 7.)  These two emails were listed in

Interbake's privilege log, and were written by Slaughter to Interbake's attorneys.  (Answer at 7.)

The ALJ initially denied the NLRB's request at the hearing.  (Answer at 10.)  However, the

NLRB renewed its request the following day, July 30, 2009, and additionally asked the ALJ to

review another document in the privilege log, the handwritten notes of a telephone conversation

between two Interbake employees and Interbake's counsel.  (Answer at 11.)  Citing *CNN*

*America, Inc.*, 352 NLRB No. 64 (2008), the ALJ agreed with the NLRB that under *CNN* he was

required to conduct an *in camera* inspection of these documents to determine whether they are

privileged and ordered Interbake to produce them.  (Answer at 11.)

Disagreeing with the ALJ's interpretation of *CNN*, Interbake refused to produce the three

requested documents to the ALJ for *in camera* review.  (Answer at 11.)  The NLRB subsequently

filed this Application with the Court requesting an order to show cause "why an order should not

issue directing [Interbake] to comply with Judge Clark's lawful order that it produce the

privileged documents . . . ."  (NLRB App. At 5-6.)

## ANALYSIS

The question presented in the pending application is whether this Court has the exclusive

authority to determine if certain documents subpoenaed by the National Labor Relations Board

are privileged.  As an initial matter, the NLRA provides that the Board and any of its designated

agents may examine witnesses and receive evidence in administrative proceedings.  NLRA, §

11(1), 29 U.S.C. §161(1).   The NLRB is also authorized to issue subpoenas "requiring the

attendance and testimony of witnesses or the production of any evidence" in proceedings or

investigations.  *Id.*  The Board may revoke subpoenas if it finds the requested information does

not relate to the matter under investigation, does not describe the evidence sought with sufficient

particularity or if the Board finds the subpoena is invalid for any other "reason sufficient in law."

*Id*; 29 C.F.R. § 102.31(b).  However, when a party refuses to comply with a subpoena it is the

district court that "shall have jurisdiction to issue to such person an order requiring such person

to appear before the Board . . . to produce evidence."  NLRA, § 11(2), 29 U.S.C. § 161(2).  Thus,

the issue raised here is whether the authority to make privilege determinations may be asserted

by the NLRB under its power to receive evidence, issue subpoenas and revoke subpoenas, or

whether it is exclusively reserved to the district court under its power to enforce subpoenas.

It is well established that federal courts are the appropriate forum for assessing privilege

claims in response to federal agency subpoenas.  In *Upjohn Co. v. United States*, 449 U.S. 383

(1981), the Supreme Court reversed the lower court's enforcement of the Internal Revenue

Service's demand for production of communications between Upjohn's counsel and its

employees.  Significantly, the Court did not compel production of the materials so that the IRS

could decide whether they were privileged, but analyzed the communications themselves,

holding that such privileged attorney-client communications "must be protected against

compelled disclosure."  *Upjohn*, 449 U.S. at 395.  Thus, *Upjohn* suggests that federal courts are

the appropriate forum to make privilege determinations.

In addition, the Supreme Court has explicitly held that a court's duty to decide whether

subpoenaed evidence must be turned over to a federal agency "cannot be committed to a

subordinate administrative or executive tribunal for final determination."  *Interstate Commerce*

*Comm'n v. Brimson*, 154 U.S. 447, 485 (1894).  As summarized by the United States Court of

Appeals for the Ninth Circuit, "This language makes clear that challenges to agency subpoenas

must be resolved by the judiciary before compliance can be compelled."  *NLRB v. Int'l*

*Medication Sys., Ltd.*, 640 F.2d 1110, 1115-1116 (9th Cir. 1981).  Thus, although administrative

agencies may regularly issue subpoenas for relevant information:

> Congress has never attempted, however, to confer upon an administrative agency itself the power to compel obedience to such a subpoena . . . That Congress should so consistently have withheld powers of testimonial compulsion from administrative agencies discloses a policy that speaks with impressive significance.  Instead of authorizing agencies to enforce their subpoenas, Congress has required them to resort to the courts for enforcement.

*Penfield Co. of California v. SEC*, 330 U.S. 585, 603-604 (1947).

While the United States Court of Appeals for the Fourth Circuit has not addressed whether an ALJ can determine privilege issues, the Sixth Circuit has held that implicit in a federal court's power to enforce subpoenas is the authority to make decisions regarding questions of privilege.  In *NLRB v. Detroit Newspapers*, 185 F.3d 602 (6th Cir. 1999), the Sixth Circuit concluded that only an Article III court may decide whether a communication or document is privileged.  In *Detroit Newspapers*, the defendant employer refused to produce privileged documents for an *in camera* inspection, despite being ordered to do so by an ALJ.  *Id.* at 603.  As in this case, the NLRB sought enforcement of the ALJ's order in district court under Section 11(2).  *Id.*  The district court dismissed the matter and delegated the privilege determination to the ALJ.  *Id.* at 604.  On appeal, the Sixth Circuit reversed the district court's decision, finding that although the Board is given general jurisdiction in labor-management disputes by the NLRA, this jurisdiction may not infringe upon Congress's specific delegation of authority to the federal courts to enforce subpoenas.  *Id.* at 605-06.  The court further held that an Article III district court may not abdicate its responsibility to determine privilege issues and delegate it to an ALJ.  The Sixth Circuit reasoned:

> We believe it is implicit in the enforcement authority Congress has conferred upon the district court… that the district court, not the ALJ, must determine whether any privileges protect the documents from production.  The district court does not have the discretion to delegate an Article III responsibility to an Article II judge.

*Id.* at 606.  Thus, *Detroit Newspapers* holds that the district court is the appropriate body to determine whether subpoenaed documents were protected by some privilege, and may not delegate this duty to an ALJ.

The reasoning in *NLRB v. Harvey*, 349 F.2d 900 (4th Cir. 1965) suggests the Fourth Circuit would reach the same conclusion as *Detroit Newspapers*.  In *Harvey*, the Fourth Circuit faced the issue of whether certain privilege claims preclude enforcement of an NLRB subpoena. *Id.*  Notably, the Fourth Circuit remanded for a "full evidentiary hearing" the issues of whether the attorney-client privilege applied to certain information and whether the NLRB's subpoena requesting this information should be enforced by the district court.  *Id*. at 907.  On remand, the district court denied the NLRB's application for subpoena enforcement and refused to compel production of information it deemed protected by the attorney-client privilege.  *NLRB v. Harvey*, 264 F. Supp. 770 (W.D. Va. 1966).  This Court finds the reasoning in *Harvey* persuasive.

Considering the foregoing precedent, this Court follows the lead of *Harvey* and the reasoning of *Detroit Papers* in holding that only an Article III court may determine whether subpoenaed documents are protected by the attorney-client or attorney work-product privileges. As a result, the ALJ's order requiring Interbake to hand over certain privileged documents for *in camera* review by him was improper.[1]

For the reasons stated above, the NLRB's Application for Order Requiring Compliance with Administrative Subpoena Duces Tecum is DENIED.

---

[1] While this Court was prepared to conduct an *in camera* inspection of the three documents in question, Interbake has met its burden of establishing that the documents are privileged under Federal Rule of Civil Procedure 26(a)(5)(A), and the NLRB has not articulated a good faith basis for doubting Interbake's claim of privilege.  *See United States v. Zolin*, 491 U.S. 554, 575-76 (1989) ("[B]efore a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes [an] exceptions applicability.") Therefore, this Court will not require *in camera* inspection of the documents.

A separate Order follows.


Dated: September  22, 2009                          /s/ _____
                                                   Richard D. Bennett
                                                   United States District Judge